[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
I.
This is the matter of Shannon and Shawn D., brothers. Shannon was born on November 17, 1987. Shawn's date of birth is November 3, 1988. Their mother is Angela G. The father is Ronald D. On July 17, 1991, the Commissioner of the Department of Children and Youth Services ("the Commissioner" and "DCYS") filed petitions on behalf of the two boys seeking the termination of the parental rights of both father and mother.
In support of these petitions the Commissioner alleged that:
the children had been found in a prior proceeding to have been neglected or uncared for and that father and mother have failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the ages and needs of the children either parent could assume a responsible position in the life of either child;
father has abandoned the boys in the sense that he has failed to maintain a reasonable degree of interest, concern or responsibility as to the welfare of either child;
there is no on-going parent-child relationship between the father and either boy, which means the relationship that ordinarily develops as a result of a parent having met on a day-to-day basis the physical, emotional, moral and educational needs of either child and to allow further time for the establishment or re-establishment of such parent-child relationships would be detrimental to the best interest of either child;
and that the above-cited grounds for termination have existed for not less than one year.
 II.
A hearing on the petitions opened on January 24, 1992, continued on June 3, June 4, July 20, August 3 and the parties rested on September 18, 1992. The parties submitted post-trial memoranda by October 23, CT Page 1838 1992. Mother appeared at time of trial and was represented by counsel. Father was noticed by publication but failed to appear.
At the hearing testimony was had from Willie T. Coleman, Phd., a clinical psychologist; Marguerite Courtney, a drug rehabilitation counsellor; Elizabeth Schaeffer, adult probation officer; Rosemarie K., the boys' foster mother; Kathleen Tafuro, an employee of the Southeastern Council on Alcoholism and Drug Dependence ("SCADD"); Jean Augeri, DCYS social worker. Mother also testified as did Ronald Black, a mental health worker and friend of mother; Carol Daly, a SCADD counsellor; Richard Drena, a therapist and associate director of the Care Plus Partial Hospitalization Program of Elmcrest Hospital; and Benson Taylor, a friend of mother's.
 III.
The termination of parental rights "is a most serious and sensitive judicial determination", In re Jessica M., 217 Conn. 459 at 464, quoting from Anonymous v. Norton, 158 Conn. 421, 430, 362 A.2d 532, cert. denied,423 U.S. 935, 96 S.Ct. 294, 46 L.Ed.2d 268 (1975). The interest of parents in their children is a fundamental constitutional right, In re Jessica M., supra at 464. Even when blood relationships are strained, parents retain a vital interest in preventing the irretrievable destruction of their family life. In re Jessica., supra, at 465, quoting from Santosky v. Kramer., 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599
(1982).
To effectuate a non-consensual termination of parental rights a petitioner must prove first, by clear and convincing evidence, the existence of a least one of the statutory grounds for termination set forth in General Statutes, Section 17a-112(b) "Consideration of the best interest of the child cannot vitiate the necessity of compliance with the statutory criteria for termination." In re Jessica M., supra at 465; In re Barbara J., 215 Conn. 3., 45. Nor can the court consider the availability of an appropriate adoptive home as bearing on the issue of establishing a statutory ground for termination, In re Jessica M., supra, at 466.
If a statutory ground for termination is so established, the court must proceed to make the six written findings required by General Statutes, Section 17a-112(d) before moving on to determine whether termination is in the best interest of the child. At this dispositional stage petitioner must prove by clear and convincing evidence that the termination sought is in the child's best interest. CT Page 1839
 IV.
Shannon and Shawn first came to the attention of this court on July 7, 1989 when the Commissioner filed a petition charging the parents with neglect and a request for an order of temporary custody ("OTC"). The OTC continued in effect until December 5, 1989 when the boys were adjudicated neglected and committed to the care and custody of the Commissioner. Since commitment the boys have lived with their foster mother, Rosemarie K.
 V.
The father of Shannon and Shawn, Ronald D., has had no contact with them since 1989. He has not contacted the foster mother to inquire after the boys' well-being. He has not sought assistance from DCYS to facilitate reunion with his sons. He failed to appear in the proceedings to terminate his parental rights. The court finds that the petitioner has proven by clear and convincing evidence that Ronald D. has abandoned Shannon and Shawn in the sense that he has failed to maintain a reasonable degree of interest, concern or responsibility for his sons' welfare; that the boys were found neglected in a prior proceeding and father has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the ages and needs of the two boys, father could assume a responsible position in the lives of these two boys; and that there is no parent-child relationship between Ronald and Shannon or between Ronald and Shawn, which means the relationship that ordinarily develops as a result of a parent having met on a day-to-day basis the physical, emotional, moral and educational needs of the child and to allow further time for the establishment or reestablishment of such parent-child relationship would be detrimental to the best interest of both Shannon and Shawn.
The court finds, by clear and convincing evidence, that the above-cited grounds for termination of father's parental rights have existed for not less than one year.
The court makes the following findings by clear and convincing evidence, as required by General Statutes, Section 17a-112(d):
(1) DCYS stood ready to provide appropriate services to father to facilitate reunification of father with his sons but father was unable or unwilling to avail himself of such services.
(2) There were no applicable court orders entered into and agreed CT Page 1840 upon by father.
(3) Because of lack of contact with their father the two boys do not know him. They have no feelings for or emotional ties to Ronald D. The boys have strong, positive emotional ties to their foster mother, Rosemarie K.
(4) Shannon is approximately five years, three months old. Shawn is approximately four years, three months old.
(5) Father has made no efforts to adjust his circumstances, conduct or conditions to make it in the best interest of either child to return either child to father's home in the foreseeable future. Since 1989 father has not visited the boys, has sent them no remembrances, nor written nor telephoned them. Father has not contributed to their support nor contacted the foster mother to inquire as to their wellbeing. Father made two telephone calls to DCYS in 1991. In neither call did he express any interest in or concern for the boys.
(6) There is no evidence that father was prevented from maintaining a meaningful relationship with either boy by the unreasonable act or conduct of any person or by his economic circumstances.
The court finds, by clear and convincing evidence, that it is in the best interest of Shannon and Shawn that the parental rights of their father Ronald D. be terminated.
 VI.
As to the mother, Angela G., the court makes the following findings of fact, by clear and convincing evidence. Angela G. is a drug addict. She is in her early thirties. Angela first began abusing drugs at age 13. For a period of several years prior to the time of trial she has used heroin, cocaine and misused prescription drugs. Mother has an extensive criminal record. Since her children were removed from her care mother has entered a series of service agreements focusing on mother's need to enter and successfully complete drug treatment and to remain substance-free as a key prerequisite to regaining the care and custody of her children. It was made clear to mother (State's Exhibit C, service agreement dated 3/27/90) that a failure on her part to make sufficient progress would result in the Commissioner's filing of petitions to terminate mother's parental rights. There ensued a number of efforts and claimed efforts by mother to comply. Mother entered and failed successfully to complete a series of drug treatment programs. By the Spring of 1991, after a number of false starts mother appeared to be CT Page 1841 making solid progress. The petitioner began preparations to return Shannon and Shawn to their mother. The boys were to be returned on June 20, 1991. On June 14th mother tested positive for cocaine and morphine. Reunification did not take place and the instant petitions were filed by July 17, 1991.
"Personal rehabilitation" means the restoration of a parent to his or her former constructive role as a parent. In re Migdalia M.,5 Conn. App. 194. A parent's progress in rehabilitation must be measured taking into consideration the ages and needs of the children. Drug use by a parent is not itself a grounds for termination of that parent's parental rights. However the court should and must consider whether drug abuse has so impeded a parent's ability to parent as to warrant a termination of that parent's parental rights.
For Angela G. personal rehabilitation meant successfully completing a drug treatment program and remaining drug-free as a basis for beginning to build a stable life. It also meant acquiring parenting skills.
Shannon and Shawn were removed from their mother's care in July of 1989. In the years prior to the filing of the instant petitions mother's attempts at rehabilitation failed repeatedly. Her life remained chaotic. She demonstrated no improvement in parenting skills.
The court finds, by clear and convincing evidence, that Shannon and Shawn were adjudicated neglected on December 5, 1989 and that mother has failed to achieve such degree of rehabilitation as would encourage the belief that within a reasonable period of time, considering the ages and needs of each child, she could assume a responsible position in the life of either child.
The court finds, by clear and convincing evidence that this ground for termination of mother's parental rights has existed for not less than one year.
 VII.
As to mother, the court makes the following findings required by General Statutes, Section 17a-112(d), all by clear and convincing evidence:
(1) The DCYS arranged for visitation and repeatedly counselled and sought to assist mother in obtaining drug evaluation and treatment and parenting skills training. CT Page 1842
(2) Mother entered into five service agreements which were set as court-ordered expectations on May 17, 1991. Mother failed to comply with the requirements to remain drug-free and successfully complete drug rehabilitation program.
(3) Shannon and Shawn have positive feelings toward Angela as someone playful, who comes to play with them.
The boys have strong positive feelings and emotional ties toward their foster mother, who has cared for them for most of their lives and who has played the role of mother in their lives.
(4) Shannon is approximately 5 years, 3 months old. Shawn is approximately 4 years, 3 months old.
(5) Mother has been consistent in visitation over the past three and more years. She has maintained regular contact with the boys' foster mother and has established a friendly relationship with the foster mother. Mother has brought the boys gifts. She has sent cards at Christmas and on birthdays.
(6) Mother has not been prevented from maintaining a meaningful relationship with her children by the unreasonable act or conduct of any person or by her economic circumstances.
 VIII.
A statutory ground for termination having been established the court must go on to decide, by clear and convincing evidence, whether termination of mother's parental rights is in the best interest of Shannon or Shawn.
The boys have spent most of their lives in foster care. They are strongly attached to their foster mother while their birth mother is a peripheral figure in their lives. The boys have remained in an uncertain status while the mother, Angela, has been afforded extended opportunities to rehabilitate.
Following the filing of the instant petitions visitation continued and mother was encouraged to undergo further drug treatment. By the autumn of 1991 mother was enrolled in still another drug treatment program at the Care Center, on a referral from DCYS. The program included periodic drug testing. On the eve of trial in the instant matter, knowing what was at stake, mother refused a test on January 10; tested positive for cocaine on January 13; tested positive for cocaine CT Page 1843 on January 17. Her explanation for the positive tests was that her roommate had surreptitiously mixed cocaine in some iced tea mix which mother had unknowingly imbibed. The trial began on January 24th; on February 26th the court granted mother's request for a continuance due to her being ill; on April 29th mother tested positive for cocaine and morphine. Her explanation was that she needed a positive test to be admitted to a methadone program.
The boys are adoptable. The foster mother is not willing to adopt the boys. It is unrealistic to expect Angela to be able to assume a responsible position in the lives of her sons in the foreseeable future. Shannon and Shawn should be given the opportunity afforded by adoption for stability and permanency in their lives. The court finds, by clear and convincing evidence, that it is in the best interest of Shannon and Shawn that their mother's parental rights be terminated.
Accordingly, the parental rights of Angela G. and Ronald D. in and to their sons, Shannon and Shawn are terminated and the Commissioner of the Department of Children and Youth Services is appointed statutory parent for the purpose of arranging for the boys' adoption. The Commissioner is to file the report required by General Statutes, Section17a-112(i) within ninety days of this decision and every twelve months thereafter until adoption is effected.
 IX.
Trial counsel for mother is appointed appellate counsel should mother seek to take an appeal of this decision. Should said counsel decline to perfect an appeal, he is to notify the clerk promptly and file a motion to extend the appeal period. A second attorney is to be appointed to review the file with a view to taking an appeal on behalf of mother. Should that second attorney decline to perfect an appeal on behalf of mother the said attorney shall notify the clerk and mother promptly. The clerk shall also notify mother, advising her that she is free to obtain an attorney to perfect an appeal, which attorney may then be appointed by the court for that purpose.
DOWNEY, J. CT Page 1844